Alright, the next case before the court is 19-2404, James-Cornelius v. HHS. Mr. Downing, you've reserved three minutes for rebuttal. Are you prepared to begin? I am, Your Honor. Okay, proceed. Thank you. Good morning, Your Honors. Again, my name is Andrew Downing. I represent the appellant in this matter, Stacy James-Cornelius. And I'm here on yet another appeal from the vaccine program where the special master's petitioner believes are misapplying the reasonable basis standard for the award of attorney's fees and expenses. And I think this appeal, Your Honors, boils down to what is required to support a finding of reasonable basis. I can start with what is not required. It is not required that a treating doctor opine that injuries are vaccine-related, nor is it required for reasonable basis to exist to have an expert opine that would somehow satisfy that reasonable basis standard. Instead, a petitioner need only demonstrate that a claim is feasible, not that there is even a likelihood of success, just feasible. So what is needed to establish reasonable basis... Why don't you focus on Cottingham because I think that's probably the critical question here is the extent to which Cottingham would control this case, the extent to which there's any distinctions from Cottingham, the extent to which you think there are additional factors. I mean, I really think that given how recent it is, that's where we ought to go. Well, I think, Your Honor, you're probably right on that, and Judge Rayna wrote Cottingham, so I was glad to see Your Honor on this panel. But I think there are a lot of similarities here, and that is buttressed by the fact that the FLE asked to have this particular case stayed while we waited on the result in Cottingham. And I think what Cottingham says is in order to establish reasonable basis, what you need when you plead a petition, you need a covered vaccine, you need medical records that reflect the injury being claimed, and then you need some basis, some feasible basis for why there would be a connection between the two. What makes me as petitioner's counsel or a petitioner feel as though this injury is vaccine-related? What objective evidence would there be to demonstrate that? I think the feeling part is problematic because that implies subjective, but what you're saying is what is it that would objectively justify bringing a claim? Your Honor, I lost you there at the tail end of what you were saying. I said that what you really need to focus on is what in the record would objectively support your bringing a claim. That's right, Your Honor. I mean, I was sort of speaking tongue-in-cheek as far as that feeling. I think you're right. That word would imply a subjective type of evidence, and that is not the standard. I agree with you that you have to look at any of these vaccine cases from the record that the special master had, and what objective evidence would there be to indicate that this may be a vaccine injury? Here, Your Honor, I mean, there's no dispute that the petitioner received a covered vaccine. There's no dispute that the petitioner's symptoms lasted beyond six months, which in and of itself sort of dispels any mistaken belief that this young man simply had mono. But evidence in the form of medical records demonstrating the injury claimed. The injury here that's claimed in the petition was POTS, an autonomic nervous system dysfunction. That injury is well documented in this child's medical chart. The special master referenced it multiple times in her decision. Following the administration of Gardasil, this child began to experience the symptoms claimed. Again, the special master recognized that because she indicated in her opinion that very fact when she said, at best, what petitioner could show was that all of the symptoms manifested after Gardasil. Well, that's exactly right. They did. The medical chart shows... Isn't it more important that the symptoms actually be consistent with what Gardasil says the symptoms could follow? I mean, that Gardasil, its own package insert says the symptoms could follow, and they include syncope and other things that are similar to the symptoms that you see with POTS, right? That's exactly right, Your Honor. I mean, and that's exactly what happened in Cottingham. That's what happened here. You know, we cited for the special master the product monograph. But this case is even stronger than Cottingham. Here, after the symptoms were present for an extended period of time, the diagnosis of POTS had been made already. And after clinical examination, the treating physician contemplated filing a VAERS form, a Vaccine Adverse Event Reporting System form, indicating that at a minimum... I mean, we don't know what was going on in this doctor's mind, but he noted it in the objective plan in the medical chart, question mark VAERS. So, at a minimum, this physician is contemplating reporting a vaccine adverse event to the CDC. That is far beyond the evidence that was present in Cottingham, and it may very well be the most important piece of evidence here in addition to the product monograph. And, you know, counsel for the government pointed out that we didn't file the medical literature below. That's true. I don't typically file a bunch of medical literature that's not sponsored by an expert. But the reason I cite to it and cite it in the petition is so that the special master knows the due diligence that counsel has gone to. And these medical journal articles are titled things like Postural Orthostatic Tachycardia Syndrome Following HPV Vaccination. So, I referenced... I'm sorry. Go ahead. Was that Judge Chen or Judge O'Malley? Yeah, it was me. But you go ahead, Judge O'Malley. Well, I was... Again, I'm a little confused by your choice of words. You said you offered it to show, you know, all the efforts that you made, but Simmons says that counsel's conduct isn't relevant. And we also have the issue that there's a difference between what constitutes bad faith, which nobody's questioning here, and what constitutes objective evidence. So, are you saying that you don't think the articles constitute objective evidence? No, no, no, Your Honor. And what I meant by that was I do think that journal articles constitute objective evidence. And I don't want to spend a lot of time on the articles because, you know, I didn't submit them. I didn't try and make Special Master Sanders read 17, you know, medical journal articles. The reason that they are referenced is by title. The effort was to demonstrate to the Special Master that medical literature exists connecting these two things together, Gardasil and POTS. And, you know, this is-it's not the first case that the vaccine program has seen in this regard. And the Special Master is aware that medical literature exists. And the reason that they're cited is by their titles alone. They demonstrate that peer-reviewed medical literature is drawing a potential causal connection between Gardasil and these very complaints that are referenced in this young man's medical chart. Okay, this is Judge Chen. I just want to make sure I understand your thinking. Let's assume for the moment that we feel, just as we did in Cottingham, that we need to remand this back to the Special Master to consider the Gardasil packaging which lists the symptoms that can occur from a vaccination. And then we also have to think about what are some of the other things that we want the Special Master to consider that maybe the Special Master didn't consider the first go-around. I guess an additional item would be the VAERS form. Is that right? Or the reference to VAERS. Is that right? It would be, Your Honor. Okay, and then-okay, let me keep going here. And so I just want to make sure I understand now your citations to medical literature but not the actual inclusion into the record of copies of those articles. Are you saying that if you were to get a remand here, that on remand the Special Master would need to get copies of those medical literature references and evaluate them in assessing the reasonable basis of the claim made? Or I'm just a little confused, given that they're technically not in the record, but there are citations to them. Yeah, right, Your Honor. What exactly do you think? Yeah, so I will tell you both the VAERS report and the product monograph were both referenced to Special Master Standards in briefing. I think there was a note in the government's red brief that this was not pointed out or suggested or highlighted to Special Master. And that is not true. It's at page three of our original brief and page three of our reply in front of Special Master Standards. So the argument about the VAERS report and the product monograph, you're absolutely right, Your Honor. Those things should have been considered and formed the basis for reasonable basis, just as they did in Cottingham. Let me ask you a question. Did you submit the articles to the Court of Federal Claims? No. Or cite them? So why do we have the same problem that we saw in Cottingham, which is that these may be relevant and it's possible that Special Master should have considered them, but there was nothing in the record? Right. That's what I was going to say, Your Honors. Now on remand, I think we would probably need to have a status conference with Special Master Standards and discuss the medical literature. It's problematic because argument of counsel is not really evidence here, and it would be me arguing the weight and merit of medical journal articles, not an expert. Are you saying you would ask Special Master to reopen the record for purposes of considering those articles? I mean, I think so. I'm not really wanting to rely a ton on the journal articles before, Your Honors, because you're 100% correct in the sense that they were not in the record. As I said, they were cited to provide additional notice to Special Master Standards that these complaints had been related in peer-reviewed journal articles. As I said, I cited the one specifically that said POTS after Gardasil, but they're not in the record. I don't want to get in a situation before, Your Honors, where I'm trying to argue the import of information that is not in the record in front of the Special Master. But as this has developed, I think that they probably are relevant in the sense that if the Special Master wants to read them to confirm or corroborate that, in fact, those articles do draw a potential causal connection between vaccination and POTS, then I'd be more than willing to provide them to her. But we would basically have three lawyers trying to interpret medical literature without the guidance of an expert. I'm not sure how persuasive, ultimately, that becomes. Counsel, I think you may be close to out of your time, but I just need a short answer on this. This is Judge Reyna, and this is with respect to the timing and severity of the symptoms. And this is a challenge and re-challenge. Is the affidavit evidence on the timing and severity of the symptoms, are they objective evidence for purposes of reasonable basis? If we look at that under the framework of challenge, re-challenge? You know, Your Honor, I think it is. I mean, it is under oath testimony, which certainly is evidence. Now, the timing and severity, as stated by the petitioner, is subjective in nature, no doubt. But under the totality of the circumstances test, I think what a Special Master should do is consider that evidence by itself. I don't even understand that statement, Counsel. How can you say it's subjective in nature when they're talking about the actual facts of what occurred and when it occurred and the level of occurrence? I could see it being subjective if you said, I think the vaccine caused this, or I don't think there's any other cause. But how is it subjective if one says, this happened on this date? Well, yes, Your Honor. My point was, you know, any time a witness says, you know, I feel like these are, you know, vaccine-related or I feel like this, I mean, that is in the affidavit. But when it becomes objective is when the victim or a parent testifies that something happened on a particular date and that is corroborated by the medical chart. I think that the Special Masters have to take under oath testimony like that into consideration under the totality of the circumstances. Why do you need corroboration? I don't understand that. No, I don't think you... That's what you said. No, that is what I said, but on the point of corroboration, when you look at... Okay, then I took your question too far, I think. For purposes of what you just said, Your Honor, yes, I think it is objective evidence. Now, I took it a step further with Judge O'Malley's questions about, you know, I feel... Counsel, you're way past your time. Yes, understood. So, we got your answer and it's yes. Okay. We'll hear from the other side. Ms. Collison? Good morning, and may it please the Court. This case is distinct from the recently decided Cottingham matter in two important ways. First, here, the Special Master, in her opinion, reproduced at Appendix 75, determined that the evidence was insufficient to confer reasonable basis, not that there was no evidence, as was the case in Cottingham, and which was the basis for the Court's finding that the Special Master there abused his discretion. Second, there was clear evidence of an alternate cause for Petitioner's injuries, mononucleosis, here, which the Special Master relied on when she weighed the evidence, and there was no such alternate cause in the record in Cottingham. But the Special Master... But the Special Master, in saying there wasn't enough evidence, didn't consider a number of the factors that, in Cottingham, we said should have been considered. So, I disagree with Petitioner's counsel's argument on that point. The Special Master laid out her standard for assessing reasonable basis at Appendix 74, and then, in applying that standard, she reviewed all the evidence that was presented to her through the petition and the fee petition, both of which are reproduced in the appendix in this case. And she determined, within her discretion, that the medical records were insufficient to show the claim's feasibility. So, she considered all of the objective evidence as was set forth in the petition and fee petition. She summarized the fee petition's arguments, in her opinion, at Appendix 70, and then she summarized the objective evidence that she considered at Appendix pages 71 to 73, which included medical records that were specified in Petitioner's fee petition at Appendix 46. Counsel, this is Judge Arena. Let me ask you a question. We're dealing with the consistency of the objective evidence with the actual record. On Appendix 74, it says right at the beginning that Petitioner's argument that her submitted record provides objective evidence is inconsistent with the actual record. So, then it goes on to show the inconsistencies, correct? And the first sentence says, Petitioner had not received all medical records necessary to establish a feasible basis before she filed the petition. This is evidenced by Counsel's repeated attempts to collect additional records and discuss the program's burden approved prior to filing. Explain to me why that, what I just read, is not subjective evidence. Why that is not subjective evidence? Oh, so, subjective evidence that the Special Master would have been improper to consider. So, it's not subjective evidence that was improper for her to consider first because she specifically stated that the…  Are Counsel's repeated? Are Counsel's repeated attempts to obtain medical records, is that subjective or is it objective evidence? His repeated attempts are not evidence at all. Right. And we said that in Simmons, didn't we? We said that the conduct of the attorney is subjective evidence. So, would you say then that the Special Master erred when they considered this timing and searched for records and Counsel's repeated attempts to collect additional records? I would not because what's important is that when he filed the case, he did not have evidence that Petitioner experienced relevant symptoms within a relevant timeframe. But that's not the question. The question is whether the attorney's conduct with respect to searching for records and acquiring records to bring a case, is that subjective evidence? It is, isn't it? Yes, and it goes to satisfying the attorney's good faith in bringing this claim. Would it be fair for me to say that the Special Master erred when the Special Master counterbalances subjective evidence with the objective evidence that was submitted in the record? No. As this case, as this court set forth in Cottingham, what's required to show reasonable basis is more than a scintilla but less than a preponderance of objective proof. And the court specifically made clear that the weight of the objective evidence or whether that evidence establishes reasonable basis is a factual finding for the Special Master. And that's what's important here. And in this case, unlike in Cottingham, the Special Master assessed the totality of the circumstances as she states in her conclusion. And her determination was that the level of objective evidence, just looking at objective evidence, was insufficient to show the claim's feasibility. Apparently, on the section that I just read and we're discussing right now, apparently the Special Master took that to be objective evidence. I don't understand how she did that. And regardless, I mean, even if you took this paragraph out of the decision, the conclusion would still be the same. The Special Master made factual determination. How do we know if in reaching the reasonable basis determination, the Special Master included in that consideration what is really subjective evidence? And we both have now agreed that attorney conduct is subjective evidence. So how do we know that the result would be the same? I would agree that an attorney's conduct is good in subjective evidence, but a lack of evidence, of subjective evidence or an understanding that there should be medical records to document what your clients are saying and an absence of that documentation, that is objective evidence. So I apologize if I misunderstood Your Honor's question, but the lack of supporting documentation to support what is in the subjective affidavits, that is objective evidence that can be considered in a reasonable basis analysis. Excuse me, counsel. Even if you think that this is a different case than Cottingham, in light of the clear statements in Cottingham, why didn't the government just agree to a remand for purposes of reconsideration in light of the Cottingham decision? Well, first, I think, Your Honor, the Cottingham decision just came out fairly recently. We wanted to wait to hear this case until that decision came out, but we were not granted a continuing extension. But I do think that this case really is very different in the language that the special master used. What about the package insert? I mean, the package says the list of symptoms, and we said in Cottingham, we have to send this back because the special master didn't consider that. And so why don't we just do that here? I can briefly address the package inserts, the medical literature, and any of those items. The package insert in this particular case is not in the record. It was noted in Cottingham at footnotes 13, footnotes 3, that no one contended it was not part of the record below. And here, I don't see it in the record below. It's not in the petition. It's not referenced in the petition. It's not in the appendix. Well, did you argue that in your red brief? I do think that I discussed the prescribing information at pages 17 to 19. I do think I stated that it's not in the record below. Even if it was filed below and would constitute some circumstantial objective evidence, I would argue to the special master, whose job it is to weigh the evidence in her discretion, that the package insert here is certainly not persuasive for the reasons that I set forth in our brief. And that insufficiency, and the reason that it's not persuasive is that there's... Well, that would be asking us to address it in the first instance, right? Correct. Okay. Correct. I think the point, if I may make, is that with prescribing information, medical literature, any kind of circumstantial objective evidence that's put in front of a special master, what we'd like guidance on is that there needs to be some kind of connection between that circumstantial evidence and the particular fact of the case. So, for example, in this case, the first episode... But the symptoms, like the fainting, the syncope, that's very much tied to this case, is it not? So, the fainting in the prescribing information has nothing to do with the type of fainting that occurred in this case. And then the syncope discussed in the prescribing information is syncope related to the administration of the vaccine. So, that's why you observe a patient for 15 minutes after the administration of a vaccine. Here, the syncope is arguably either related to an autonomic dysfunction. The special master, in her discretion, determined that the weight of the evidence suggested it's really probably more likely related to the mononucleosis diagnosis. The same thing with headaches. A headache can be a headache. It can be a sign of autonomic dysfunction. It can be just a headache. And here, in the adverse reaction section of the... But I don't even understand. I mean, you're saying that you're making medical determinations on what you think the package insert was warning about. And so, you think, based on those determinations, that it's not objective evidence. I'm not saying that it's not objective evidence. I'm saying that I would argue, to a special master weighing the evidence, that it has very little persuasive value because there's not a connection to the specific facts in this case. That's what I'm saying. And the same thing for medical literature. You know, here, as Petitioner acknowledged, medical literature was not filed. And as he also acknowledged, it's difficult for a special master to interpret medical literature without an expert opinion. Well, you don't have to fully interpret medical literature to know that you have met a very low standard of showing reasonable basis. I mean, we're talking, basically, just more than a scintilla of evidence. You don't have to determine that the medical literature was correct. You only have to determine that there was a reasonable basis because all this medical literature existed to bring, to assert the claim. The vaccine acted... I mean, you're not talking... They don't have to prove, at this stage, the merits of their claim. No, and I agree. But what they have to prove is that there's enough of a connection that warrants spending vaccine program funds to address the petition. And very rarely do the special masters deny reasonable basis. And when they do so, they do so to make a point that there's not enough here. You're wasting my time. And the Vaccine Act does not intend for every single case to be compensated. And that's what we're trying to protect. And, you know, that is why the reasonable basis standard, I assume, is, you know, predicated on objective evidence, similar to the preponderance standard is, you know, requires some... Per the Act, Section 13A1, requires some substantiation by medical records or medical opinion. I mean, there has to be enough of a connection between... For a lay person to understand between a piece of evidence, objective evidence, like a medical article or their report and the particular facts of a case to rise to the level of satisfying reasonable basis. Otherwise, you know, every single case would be compensated. So petition would be compensated in terms of fees. And that's not what the Act... But the Act does contemplate that it should be very much the exception when they're not compensated. And that's why they specifically, you know, don't require you to prevail on the merits in order to be compensated. Correct. And in this case, the special master, you know, assessed a totality of the circumstances and determined that the claim was not feasible based on the objective evidence, that the objective evidence put forth was simply insufficient. She considered all the objective evidence... Counselor, that statement, the statement that you're making right now, I... Yes. That's the statement you made in your brief. And that's kind of like your conclusion. And you're concluding now with that statement. But doesn't Cottingham change that statement? Aren't you... Are you unable to agree that Cottingham has an impact on this case? No, I very much agree that Cottingham has an impact on this case. Well, would the government then, now that you've had a chance to look at it, would the government now agree to a remand in order to consider this case in view of Cottingham? No, because in my reading of the special master's decision, this case, her decision actually comports with the central takeaways of Cottingham, which I drew to be, first, that reasonable basis can only be established with objective evidence, which is what the special master considered. Second, that all objective evidence presented to the special master at the time should be considered, which she did and more. So this is one of those cases where the special master says, not enough, you're wasting my time. Yes. Not that there was none, that there was not enough. Okay, thank you. Thank you very much. Okay, Mr. Downing? Apologies, Your Honor. How much time should I set for rebuttal? Two minutes. Thank you. Your Honor, may I proceed? Yes. Okay, thank you. And just very briefly, to Judge Raynish, your questions with regards to conduct of counsel, I didn't have an opportunity to cover that in my opening. Obviously, it's an issue in our briefing, and I think it's important in the sense that, obviously, Simmons makes it clear that conduct of counsel is not objective evidence to satisfy the reasonable basis test, and yet special master standards devoted a lot of her analysis to going through my timesheets, which is, you know, judges aren't typically privy to those conversations with clients anyway, but in this instance, because of our system, they are. But then she spends a lot of time discussing counsel's conduct and speculating as to the fact that my conduct in meeting with my clients somehow reflects that the case lacked reasonable basis. I do think that's error. Again, I think this case is very, very similar to Cottingham. I appreciate the court's questions as to whether the government would agree to a remand because I think it's almost identical in the sense of what the special master did and failed to consider. That evidence was in front of her at the time, cited to in the fee applications, laid out very clearly. But as I said earlier, I think this case is actually stronger than Cottingham given the treating doctor's contemplation of reporting a vaccine adverse event to the CDC. That is really in the record. Yes, sir. Yes, sir. We heard this morning from the other side that the package insert was not in front of the special master. Is that true or is that not true? Well, Your Honor, we presented that to special master standards exactly the same way counsel for the government presented it in their red brief at page 19. With a description of the symptoms associated with Gardasil and the clinical trials and the post-marketing experience and then citing to the product monograph. It's reproduced in the briefs and then given the site and at page 19 of the red brief, the site is exactly the same. It's referenced Merck's product insert for, you know, the particular Gardasil vaccine given. So it wasn't from her. It's cited much in the same way as a case reference. But there's no statement in the red brief with regards to an objection that somehow that evidence was not in front of the special master at the time. Okay. Thank you, counsel. The case will be submitted. Thank you, Your Honor. Thank you very much.